Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board *v.* Teamsters Union Local No. 77, Appellant.

Argued June 3, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Robert D. Kaplan,* with him *Howard J. Casper,* and *Casper & Muller,* for appellant.

*James L. Crawford,* Assistant Attorney General, with him *James F. Wildeman,* Assistant Attorney General, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, July 23, 1975:

Whether the Pennsylvania Labor Relations Board (PLRB) must compensate each of the three arbitrators selected pursuant to section 806 of the Public Employe Relations Act[1] to arbitrate a collective bargaining impasse involving prison guards is the issue before this Court. The PLRB contends that it, in furtherance of the public policy of the Act, should only compensate the neutral member of the panel and that the parties should each pay for their respective appointee to the panel.

With regard to the circumstances that give rise to this controversy suffice it to say that a collective bargaining impasse was reached, mediation failed to resolve that impasse, and, pursuant to the mandatory dictates of section 805 of the Act, 43 P.S. §1101.805, the impasse was submitted to binding arbitration.

At the conclusion of the arbitration, the union's appointee submitted a bill to the union for his services, which bill was forwarded to the PLRB for payment. After hearing before the PLRB and upon its refusal to make said payment, appeal was taken to this Court.

Section 805 of the Act mandates binding arbitration for prison guards in the event of a collective bargaining impasse.

The selection of members of an arbitration panel is the subject of section 806, which provides:

"§1101.806 Selection of arbitrators for units involving guards and court personnel

"Panels of arbitrators for bargaining units referred to in section 805 of this article shall be selected in the following manner:

"(1) Each party shall select one member of the panel, the two so selected shall choose the third member.

---

1. Act of July 23, 1970, P. L. 563, 43 P. S. §1101.806.

"(2) If the members so selected are unable to agree upon the third member within ten days from the date of their selection, the board shall submit the names of seven persons, each party shall alternately strike one name until one shall remain. The public employer shall strike the first name. The person so remaining shall be the third member and chairman."

Section 807 then provides:

"The costs of the arbitrators selected under the provisions of section 806 shall be paid by the Commonwealth under rules and regulations established by the board."

It is difficult to perceive how the legislature could have more clearly and explicitly expressed itself that all arbitrators appointed pursuant to section 806 to resolve a collective bargaining impasse requiring binding arbitration under section 805 are to be paid by the Commonwealth. The PLRB, however, would have us find ambiguity in this language and have us reach the result that only the neutral arbitrator is to be paid by the Commonwealth under broad policy considerations. It would have us find ambiguity in section 807 by comparing its provisions with the language of section 806 which directs itself to *panels* or a *panel* of arbitrators whereas section 807 dealing with payment does not include the word *panels* or *panel* but speaks only of arbitrators. Notwithstanding the plural use of the word *arbitrator* in section 807, the PLRB finds ambiguity because of the absence of the word *panel* or *panels* in this section. While this is a correct analysis of the language employed in these two sections, we are at a loss to understand the asserted resulting ambiguity. Where the words of a statute are clear, the letter is not to be disregarded in search of legislative intent.[2]

The PLRB also asserts that other sections of the Act, 802(4), 804 and 903(2) relating to sundry kinds of

---

2. *Statutory Construction Act of 1972*, 1 Pa. C.S. §1921(b).

arbitration or mediation proceedings are supportive of its position in disclosing a legislative intent to apportion costs of such proceedings. We agree that two of these provisions disclose such an intent, but more importantly as decisive of the issue here, disclose, by way of comparison to the provisions of section 807, that the legislature explicitly differentiated between those proceedings in which the costs of arbitrators or fact finders are to be shared in some manner and those in which the Commonwealth is directed to bear the entire cost.

Section 802 deals with mediation incident to a collective bargaining impasse and provides for fact finding under certain conditions and within specified time frames. Subsection (4) of that section provides that if fact finding occurs, that the Commonwealth shall pay one-half of the costs of fact finding with the parties sharing the other half. Similarly, section 903 dealing with arbitration of disputes and grievances arising under a collective bargaining agreement, provides in subsection (2) that the costs of arbitration shall be shared equally by the parties. Section 804 simply provides for voluntary arbitration upon an impasse in collective bargaining with the proviso that the decision of the *arbitrator* which would require legislative enactment to effectuate is to be considered advisory only.

In our opinion, the legislature, in its wisdom, decided that in certain kinds of arbitration or fact-finding proceedings, costs thereof are to be shared, while in others (section 806 proceedings) the Commonwealth is to bear the costs. And it did so in clear language thus not requiring a search for the illusive legislative intent.

Finally, the PLRB argues that public policy compels that we affirm. In essence, it says that unless the union's collective bargaining representative is compelled to pay the costs of its arbitrator, it will not bargain in good faith, but rather engage in "surface bargaining" and force all issues to arbitration in which the PLRB asserts

the union traditionally receives more favorable awards. As there is no factual support for this assertion in the record, it must be rejected, but even if one assumes its factual support and soundness in principle, the legislature has otherwise spoken.

If the provisions of section 807 are deleterious to good faith bargaining on the part of the employes' collective bargaining representative, it is a matter for correction by the legislature.

ORDER

Now, July 23, 1975, the December 11, 1974 order of the Pennsylvania Labor Relations Board is reversed and the case is remanded to the Board to provide for the payment of costs of the union's arbitrator.